# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR F 09-0253 LJO |
| Plaintiff, | **ORDER ON DEFENDANT'S 28 U.S.C. § 2255 MOTION** |
| vs. | |
| CARLOS ALCANTAR-SAAVEDRA, | |
| Defendant. | |

## INTRODUCTION

Defendant Carlos Alcantar-Saavedra ("defendant") is a federal prisoner and proceeds pro se to seek 28 U.S.C. § 2255 ("section 2255") relief. Defendant asserts multiple grounds for relief, including, *inter alia*: (1) he was improperly sentenced based on a prior order of removal; (2) his plea agreement was not made knowingly or voluntarily; (3) he is a United States citizen; (4) consideration of a prior order of removal for sentencing purposes violated the Double Jeopardy Clause of the United States Constitution; and (5) he was not advised of his rights to contact his consulate pursuant to the Vienna Convention. Having considered defendant's section 2255 motion on the record, this Court denies defendant section 2255 relief for the following reasons.

## BACKGROUND

### Plea Agreement

By a May 25, 2011 plea agreement, defendant voluntarily entered a guilty plea to being a

1

deported alien found in the United States in violation of 8 U.S.C. § 1326. In the plea agreement, defendant acknowledged that he "fully understands the nature and elements of the crime in the Indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney." Defendant agreed to the factual elements of the crime charged, including that he "is not a citizen of the United States." Defendant further agreed:

1. "Except for the four (4) level departure agreed to by the Government...pursuant to U.S.G.G.§ 5K3.1...not to move for a downward departure or reduction of his sentence.
2. "Not to move for any other downward departure or variance in his sentence, whether under the Sentencing Guidelines or the factors of 18 U.S.C. § 3553, for a term of imprisonment of less than forty-six (46) months";
3. Not to move "for a downward departure of his offense level, criminal history category, or criminal history points as defined by the Sentencing Guidelines"; and
4. To "waive all Constitutional, statutory, and legal rights to appeal his plea, conviction and sentence," including "an express waiver of appeal of this plea" and "to attack collaterally . . . his plea," including filing a section 2255 motion.

Defendant was further advised that the Court was not a party to the agreement and that the Court must consult the Sentencing Guidelines to determine a final sentence. Defendant agreed that he entered into the plea agreement voluntarily and without force. In addition to his rights to counsel and jury trial, defendant was advised that the possible maximum sentence would be, *inter alia*, twenty (20) years imprisonment and a $250,000 fine.

### **Change of Plea and Sentencing**

On May 27, 2012, defendant appeared in Court to change his plea. At the hearing, defendant indicated to the Court that he both read and spoke English. He acknowledged that he read and signed the plea agreement, reviewed it with his lawyer, and that all of his questions had been answered to his satisfaction. Defendant acknowledged the factual statement and the elements of the crime. Referring to the factual statement, including that he was not a United States Citizen, the Court asked defendant: "Is there anything about that factual statement that you think is not true?" Defendant responded "No, sir." The Court further asked: "Is anybody threatening or forcing you to get you to do this...or promising

you anything other than what's in the plea agreement?" To each question, defendant responded, "No." The Court asked defendant multiple times if he had any questions. To each question, defendant responded, "No." Based on these and other responses, the Court accepted the knowing and voluntary plea of defendant.

Defendant agreed to be sentenced on the same day. Defendant indicated that prior to the hearing, he had read the pre-sentencing report. Pursuant to that report, the applicable guideline range was indicated to be 70 to 87 months imprisonment, with a recommendation of 70 months imprisonment.

Pursuant to the plea agreement, the government moved for a four-level 5K3.1 departure and recommended a sentence of 46 months. Defense counsel also requested a sentence of 46 months. After both of these recommendations, the Court asked the defendant, "Sir, is there anything you want to tell me before I sentence you?" Defendant replied, "No, sir."

The Court granted the government's motion for the four-level downward departure and sentenced defendant to the recomended term of 46-months imprisonment. The judgment of the court was entered on June 2, 2011.

## Section 2255 Motion

Defendant filed section 2255 motion on May 24, 2012. Defendant bases his motion on the following grounds:

1. Ineffective assistance of counsel. Defendant argues, *inter alia*, that defense counsel should have clarified to the Court that the 1999 underlying deportation of defendant was insufficient to trigger a 16-point enhancement under the Sentencing Guidelines. Defendant argues that the 1999 deportation "cannot support a prosecution" and "reinstatement of" of the 1999 deportation order "is not valid" because it was a stipulated deportation.

2. Whether the acceptance of the plea agreement was knowingly and intelligently made and entered. Defendant asserts: "I never went into an agreement or stipulated to a Reinstatement of 1999 Removal, during Plea Colloguy [sic] I was never told by the magistrate judge [sic] that I would be stipulating or sentenced with a 16 point enhancement."

3. Whether the defendant is a United States Citizen based on his father becoming a citizen when defendant was 14 years old. Defendant avers: "When I was 14 years old my father became a United States Citizen therefor [sic] making me a United States Citizen. I did tell my Defense Counsel and he did speak to my Father and to my Surprice [sic] did not do the Investigation."

4. Whether Geneva "Convention, Treaty Was Violated Under Fourth, Fifth, and Sixth Amendment and Uniform Commercial Code." This argument is based on defendant's assertion that he was not advised at any time that he could contact the Mexican Consulate on or before any hearings, motions, statements, or rulings.

5. Whether Stipulated Removal and 1999 Order of Removal Failed to Comply with Due Process. Defendant asserts that he never admitted that he was subject to a previous order of removal in 1999. He claims that he never agreed not to contest the 1999 order of removal. He further argues that because he was sentenced based on his 1999 deportation, he was actually sentenced to a charge different from the one originally charged. Defendant claims that he was sentenced to a superceding indictment that was not brought before the grand jury. In addition, defendant argues that double jeopardy precludes the court from enhancing his sentence based on the 1999 order of removal. Defendant also appears to be challenging the actions of the immigration law judge at the 1999 proceeding in this claim.

The Court considers each argument separately, after addressing grounds for dismissal of this motion.

## DISCUSSION

### Waivers

In his first claim, defendant attacks his sentence. He challenges a 16-point increase for a prior deportation, and he argues that he should have received a 2-level downward departure for cultural assimilation. He also challenges receiving three points for his criminal history. In his second claim, defendant requests the Court to re-sentence him to a level of 8, with a sentencing range of 15-21 months, since it is "well-settled in this court that the district court cannot relie [sic] on the PSR characterization of a defendant's prior offense for Enhancement purposes."

Defendant waived his right to challenge his sentence. As set forth in the plea agreement, signed by defendant, he agreed (1) not to move for a downward departure or reduction of his sentence; (2) "not to move for any other downward departure or variance in his sentence, whether under the Sentencing Guidelines or the factors of 18 U.S.C. § 3553, for a term of imprisonment of less than forty-six (46) months"; and (3) not to move "for a downward departure of his offense level, criminal history category, or criminal history points as defined by the Sentencing Guidelines. Despite this written agreement, defendant is attempting to move for a downward department of his office level, criminal history category and points, and asks for a reduction of his sentence in both his first and second claims.

Moreover, defendant waived his right to challenge his sentence through a section 2255 motion in his plea agreement. This agreement is enforceable against defendant to preclude him from challenging his sentence in this section 2255 motion.

A plea agreement is a contract and subject to contract law standards. *United States v. Escamilla*, 975 F.2d 568, 571 (9th Cir. 1992), *United States v. Read*, 778 F.2d 1437, 1441 (9th Cir. 1985). A defendant may waive the right to bring a section 2255 petition. *United States v. Abarca*, 985 F.2d 1012, 1013 (9th Cir.), *cert. denied*, 508 U.S. 979 (1993). "[A] prisoner may not collaterally attack a judgment if the prisoner waived the right to do so." *United States v. Racich*, 35 F.Supp.2d 1206, 1210 (S.D. Cal. 1999). A plea agreement does not waive the right to bring a section 2255 petition unless it does so expressly. *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). The right to bring a collateral attack under section 2255 is statutory, and a "knowing and voluntary waiver of a statutory right is enforceable." *Abarca*, 985 F.2d at 1014.

Defendant's waiver of his appeal and collateral attack rights, as part of defendant's knowing and voluntary plea agreement, is valid. In the plea agreement, defendant waived appeal of his plea, conviction and sentence, and agreed not to attack his conviction by a section 2255 motion. Additionally, defendant waived an attack on his sentence based on his deportable alien status, criminal history, and matters subject to his claims. Defendant further attempts to attack his sentence, although he agreed not to attack his sentence in his plea agreement. Defendant waived his rights to do so in an enforceable contract. Given these waivers, defendant is precluded from pursing issues that do not relate to performance of his attorney or voluntariness of waiver. *See Escamilla*, 975, F.2d at 571; *Abarca*, 985

F.2d at 1013. Accordingly, each of defendant's counts is dismissed to the extent that they seek to challenge his sentence or otherwise raise issues that were waived by defendant in his plea agreement.

## **Knowing and Voluntary Waiver**

Despite his assertion to the contrary, defendant's plea was voluntary and intelligent plea. "It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508–09 (1984). To determine voluntariness, the Court examines the totality of the circumstances. *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir.1986). A plea is voluntary if it "represents a voluntary and intelligent choice among alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). "[A] plea of guilty entered by one fully aware of the direct consequences ... must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States*, 397 U.S. 742, 755 (1970). In sum, "a guilty plea is void if it was 'induced by promises or threats which deprive it of the character of a voluntary act." *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir.1995) (quoting *Machibroda v. United States*, 368 U.S. 487, 493 (1962)).

With the plea agreement, defendant acknowledged that he was fully aware of the direct consequence of his plea. In both the plea agreement and at his change of plea hearing, defendant acknowledged that he entered into the agreement voluntarily and freely. He further acknowledged that he understood the terms of the agreement, understood his rights, and that all of his questions had been answered.

The asserted factual basis for defendant's current claim that he did not understand the agreement are contradicted by defendant's statements on the record and the plea agreement. Defendant asserts that he was unaware of the agreement, the basis for the sentence, and that he might be sentenced to a time period before 2 years. Defendant acknowledged that the government would recommend a sentence of 46 months in his plea agreement, that the Court was not a party to the contract and might deviate from that recommendation, and that his maximum sentence faced was much higher than 2 years. Defendant now claims that he entered into the agreement without knowing the basis of the sentence. At the time

of his sentencing, however, defendant testified that he read the pre-sentencing report and understood it. The facts now challenged by defendant, including the 1999 order of deportation, were included in that report. Defendant knew at the time of his change of plea and sentencing the basis for the sentence. Moreover, defendant was given multiple opportunities at the time of his change of plea hearing to raise issues or questions, if he had any. Defendant always indicated that he had no questions, fully understood the plea and the sentence, and declined to make a statement or raise any issues when invited to do so by the Court prior to sentencing.

For these reasons, the Court finds the plea agreement to be enforceable against defendant to preclude this motion and his challenge of the enhancements. Thus, under *Brady*, defendant's plea must stand, as his plea was voluntary and intelligent.

## **Double Jeopardy**

Defendant argues that the Court's consideration of his 1999 order of removal in his sentence violates the Double Jeopardy Clause. The Double Jeopardy Clause affords a defendant three basic protections: 1) protection against a second prosecution for the same offense after acquittal; 2) protection against a second prosecution for the same offense after conviction; and 3) protection against multiple punishments for the same offense. *Jones v. Thomas*, 491 U.S. 376, 379-81, *reh'g denied*, 492 U.S. 932, (1989); *Gray v. Lewis*, 881 F.2d 821, 822 (9th Cir.), *cert. denied*, 493 U.S. 996 (1989). Legislative intent defines the scope of "punishment," and once Congress has prescribed the appropriate punishment for an offense, the government may not impose the penalty on the accused more than once. *See Brown v. Ohio*, 432 U.S. 161, 165 (1977) (stating that "the legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense...."); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) (stating that "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended").

The Court did not violate defendant's right against double jeopardy by considering his prior conduct in forming the sentence. "Enhancement of a sentence based on relevant conduct offenses, where the resulting sentence for the offense of conviction is within the statutory maximum, does not constitute 'punishment' for the relevant conduct within the meaning of the Double Jeopardy Clause." *U.S. v.*

*Scarano*, 76 F.3d 1471, 1477 (9th Cir. 1996). Here, the recommendation in the pre-sentencing report, based on the consideration of the 1999 Order of Deportation, of 70 months was well below the statutory maximum sentence of 20 years. Moreover, the Court granted the government's motion, pursuant to the plea agreement, for a downward departure and accepted the government's recommendation of a 46-month sentence. The actual sentence imposed much lower than the statutory maximum. Accordingly, this Court's sentence did not violate the Double Jeopardy Clause and defendants' fifth claim is denied.

### **Improper Attack of Immigration Proceedings**

To the extent that defendant attempts to attack the immigration proceedings that resulted in the 1999 order of removal, this Court lacks jurisdiction to consider defendant's claims. The REAL ID Act of 2005 created "streamlined judicial review" of final orders of deportation, removal, and exclusion, by eliminating habeas corpus relief in the district courts and conferring exclusive jurisdiction over these matters to the circuit courts. *Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir.2005); 8 U.S.C. § 2252. The REAL ID Act "expanded the jurisdiction of the circuit courts over final orders of removal" and "makes the circuit courts the 'sole' judicial body able to review challenges to final orders of deportation, exclusion, or removal." *Id*. (citing REAL ID Act, Pub.L. No. 109–13, 119 Stat. 231, § 106(a)). The REAL ID Act also conferred jurisdiction to the circuit courts over criminal alien's petitions for review. *Puri v. Gonzales*, 464 F.3d 1038–1041–42 (9th Cir.2006). Congress expressly made the judicial review provisions of the REAL ID Act apply retroactively. *Id*. at 106(b) ("The amendments made [relating to judicial review] shall apply to cases in which the final administrative order of removal, deportation or exclusion was issued before, on or after the date of enactment of this division."); *see also*, *Fernandez–Ruiz v. Gonzales*, 410 F.3d 585, 587 (9th Cir.2005) (REAL ID Act's judicial review provisions apply retroactively). Through the REAL ID Act, Congress sought to "limit all aliens to one bite of the apple with regard to challenging an order of removal, in an effort to streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review)." *Iasu v. Smith*, 511 F.3d 881, 887 (9th Cir.2007). Accordingly, defendants' claims are dismissed to the extent that they seek to challenge the immigration proceedings related to the 1999 order of removal.

///

## Vienna Convention

In his fourth claim, defendant contends that he was never advised that he could contact the Mexican consulate at any time during his proceedings. Although he contends that this violates the Geneva Convention, multiple Constitutional Amendments and the Uniform Commercial Code, this argument is based on the Vienna Convention on Consular Relations. Because this Court finds that defendant's plea was made knowingly and voluntarily, the court also finds that the waiver set forth therein is enforceable and encompasses defendant's claim of a violation of the Vienna Convention due to the alleged failure to advise defendant regarding consular services. Because defendant waived this issue, this Court denies section 2255 relief.

In the alternative, this Court finds even if defendant was not advised of his right pursuant to the Vienna Convention, defendant is not entitled to section 2255 relief. Article 36(1)(b) of the Vienna Convention holds that if a person detained by a foreign country "so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State" of such detention, and "inform the [detainee] of his righ[t] to request assistance from the consul of his own state."[1] Pursuant to this provision, if petitioner so requested, the United States authorities were required to inform the Mexican consulate of defendant's detention and informed defendant of his right to request assistance from his consulate. *See Medellin v. Texas*, 552 U.S. 491, 499 (2008) (*Medellin I*). Although the International Court of Justice held that the United States violated the Vienna Convention by failing to notify a defendant of his right to consular assistance in *Case Concerning Avena and Other Mexican Nationals*, the United States Supreme Court has held that "neither the *Avena* decision nor the President's Memorandum purporting to implement that decisions constituted directly enforceable federal law." *Garcia v. Texas*, 131 S.Ct. 2866, 2867 (2011). In *Medellin v. Texas*, 554 U.S. 759 (2008) (*Medellin II*), the Supreme Court explained: "It is up to Congress whether to implement obligations undertaken under a treaty which (like this one) does not itself have the force and effect of domestic law sufficient to set aside the judgment or the ensuring sentence." *Id*. at 760. At this time, this Court is unaware of any legislation passed by Congress that would allow this Court to set aside a judgment or sentence based on

---

[1] There is no evidence that defendant requested that the United States' officials advise his consulate of his detention.

9

a violation of the Vienna Convention. As the *Medellin II* court noted, "this inaction [by Congress] is consistent with the President's decision in 2005 to withdraw the United States' accession to jurisdiction of the ICJ with regard to matters arising under the Convention." *Id*.

Even if this Court could afford some relief based on the alleged Vienna Convention violation, this Court would only do so in the event that defendant was prejudiced by the violation. *See id.* at 761; *see also*, *Hernandez v. United States*, 280 F. Supp. 2d 118 (S.D.N.Y. 2003) (rejecting alien's appeal to relief absent evidence that consultation with consulate would have altered the outcome of his case); *United States v. Ore-Irawa*, 78 F. Supp. 2d 610 (E.D. Mich. 1999) (holding that for actual prejudice to be demonstrated to justify a claim of relief for Article 36 violation, a foreign national must demonstrate that there was a likelihood that the contract with the consult would have resulted in meaningful assistance); *United States v. Miranda*, 65 F. Supp. 2d 1002 (D. Minn. 1999) (holding that criminal defendant must establish prejudice from violation of rights under Vienna Convention).

This Court finds no evidence of prejudice, and no allegations of prejudice, based on the alleged failure to advise him of his right to contact his consulate. There is no evidence from the record that defendant was denied any of his Constitutional rights, e.g., the right to a court-appointed attorney or the right to a speedy trial. Moreover, the Vienna Convention does not implicate a foreign national's constitutional rights. *See, e.g., United States v. Minjares-Alvarez*, 264 F.3d 980, 987 (10th Cir. 2001) ("There is nor reason to think the drafters of the Vienna Convention had the uniquely American [Fifth and Sixth Amendments] in mind...given the fact that even the United States Supreme Court did not require the Fifth and Sixth Amendment post-arrest warnings until it decided *Miranda* in 1966, three years after the treaty was drafted."). And, as set forth above, it is only when these rights are violated that this Court is in a position to grant defendant relief. *See, e.g.*, *Medellin II*, 554 U.S. at 780; *Strickland v. Washington*, 466 U.S. 668 (1984). For this alternate reason, this Court denies defendant's motion based on the Vienna Convention.

## **Ineffective Assistance Of Counsel**

Although defendant waived his right to attack collaterally his sentence through a voluntarily and intelligent plea, defendant may not be able to "waive a claim of ineffective assistance of counsel based on counsel's erroneously unprofessional inducement of the defendant to plead guilty or accept a

particular plea bargain." *United States v. Pruitt*, 32 F. 3d 431, 433 (9th Cir. 1994). As such, this Court scrutinizes defendant's ineffective assistance of counsel claims.

When considering an ineffective assistance of counsel claim, a court must consider two factors. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994), *cert. denied*, 513 U.S. 1001, 115 S.Ct. 513 (1995). The first factor is whether the counsel's performance fell below an objective standard of reasonableness considering all of the circumstances. *Strickland,* 466 U.S. at 687-688, 104 S.Ct. at 2064; *Bloom v. Calderon*, 132 F.3d 1267, 1270 (9th Cir. 1997), *cert. denied*, 494 U.S. 1039, 118 S.Ct. 1856 (1998). A defendant must demonstrate that counsel's performance was deficient and that counsel made errors so serious as not to function as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. A defendant must identify counsel's alleged acts or omissions that were not the result of reasonable, professional judgment considering the circumstances. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848, 117 S.Ct. 135 (1996). There is a strong presumption that counsel's performance fell within the wide range of professional assistance. *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586 (1986) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065); *Bloom*, 132 F.3d at 1270; *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990). Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 677-678; 104 S.Ct. at 2063; *Quintero-Barraza*, 78 F.3d at 1348; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Defendant's ineffective assistance of counsel claim is based on his assertion that his defense counsel failed to investigate his claim that he was a United States citizen. Within his motion, defendant writes: "W[h]en I was 14 years old my father became a United States citizen therefor making me a United States citizen. I did tell my defense counsel and he did speak to my Father and to my Surprice [sic] did not do the Investigation." In his declaration, attached to his section 2255 motion, defendant explains further: "I told my defense counsel that my dad is a U.S. Citizen and he spoke to my dad. He told he that he would look into it but came back and said that I didn't qualify because my dad didn't raise me, never doing a proper investigation."

Based on defendant's allegations in his motion and his declaration, it appears that his defense

counsel did conduct a proper investigation of defendant's claim of citizenship. Defense counsel did contact defendant's father to discuss the assertion that his father became a United States citizen when he was fourteen years old. And it further appears that the defense counsel conducted legal research. This finding is based on defendant's averment in his attached declaration that his defense counsel told him that he did not qualify as a United States citizen because his father did not raise him. This legal opinion appears to be based on further information the defense counsel received when conducting the investigation with defendant's father coupled with application of that fact to the relevant and applicable legal authority (as discussed more fully below). Accordingly, defendant has failed to show that counsel's performance was deficient to a level that denied him the effective assistance of counsel.

Defendant asserts the erroneous legal conclusion that because his father became a naturalized United States citizen when defendant was 14 years old, that defendant automatically became a United States citizen. A person may derive citizen either at birth or after birth. A person may acquire citizenship at birth if a child was born to a citizen parent. *See, e.g.*, 8 U.S.C. §§1401(c), (d), (e), (g) (examples of INA provisions conferring citizenship by descent). Because defendant admits to being born outside of the United States in his attached declaration, defendant would only automatically become a citizen at birth if, among other things, his parents were United States citizens at the time of his birth. But this citizenship by descent is not applicable, where, as here, defendant's claim to citizenship is based solely on his father's naturalization when defendant was 14 years old. In this case, defendant would be eligible for "derivative citizenship", which is citizenship derived after birth through the naturalization of a parent.

Based on his father's naturalization when he was 14 years old, defendant would be entitled to derivative citizenship only if all of the following factors were fulfilled:

(1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization;
(2) the child is under the age of eighteen years; [and]
(3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

8 U.S.C. §1431. Here, defendant fails to set forth any facts to support the third element–that he was in the physical custody of his citizen parent and that he was lawfully admitted to the United States for permanent residence. This is a condition precedent to establishing that defendant was a United States

citizen. The defense counsel concluded that defendant was ineligible for citizenship because his citizen father "didn't raise him." This advice appears to be directed at this third element, which requires the citizen parent to have had legal and physical custody. Defendant does not dispute this asserted fact that the citizen father did not have legal and physical custody of defendant at the time. In addition, defendant admits that he was brought to this country when he was two years old and that he has been deported at least four times. Based on these assertions, this Court cannot conclude that defendant was "in the legal and physical custody of the citizen parent *pursuant to a lawful admission for permanent residence*" to make his eligible for derivative citizen based on his father's naturalization when he was 14 years old.[2]

Defendant's claims fail to demonstrate that his defense counsel's performance was deficient and that his counsel made errors so serious as not to function as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Defendant is unable to establish ineffective assistance based on his erroneous claim of citizenship, as explained above. Moreover, defendant is unable to attempt to blame his counsel for his agreement from which he now attempts to distance himself. In the plea agreement, defendant admits that he is a Mexican citizen, was removed from the United States previously, and illegally re-entered the United States thereafter. Defendant admitted that his counsel explained the agreement to him fully. His assertions to the contrary do not establish ineffective assistance of counsel.

Defendant further fails to establish the second factor of the *Strickland* analysis. The second factor for court consideration is whether the petitioner has proven prejudice affirmatively. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067; *Bloom*, 132 F.3d at 1271. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2066. A reasonable probability is "a probability sufficient to undermine the confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2066. In addition, the court can find prejudice only when the outcome would have been different

---

[2] If is further questionable whether defendant would have been able to base his derivative citizenship claim based on his father's naturalization only at the time he was eligible in 1994. An earlier provision of this statute provided for derivative citizenship based either on the naturalization of the mother, if the child was born out of wedlock and not legitimized legally, the naturalization of both parents, or the naturalization of the parent having legal custody of the child when there has been a lawful separation of the parents. See, 8 U.S.C. §1431. None of these appear to apply under the facts asserted here.

13

without counsel's errors. *See Lockhart*, 506 U.S. at 369-370, 113 S.Ct. at 842-843. A court must also evaluate whether the entire proceeding was fundamentally unfair or unreliable because of counsel's ineffectiveness. *See Lockhart*, 506 U.S. at 369-370, 113 S.Ct. at 842-843; *Quintero-Barraza*, 78 F.3d at 1345; *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994). A defendant may be granted a windfall, to which he is not entitled, if his/her conviction or sentence is set aside solely because the outcome may have been different but for counsel's errors. *Lockhart*, 506 U.S. at 369-370, 113 S.Ct. at 842. Thus, if a court finds that counsel's performance fell below an objective standard of reasonableness, and that but for counsel's unprofessional errors, the result of the proceeding would have been different, the court must determine despite the errors and prejudice, whether the proceeding was fundamentally fair and reliable.

Defendant offers nothing meaningful to demonstrate that counsel's conduct prejudiced him. There is no evidence that defense counsel made errors so serious as not to function as Sixth Amendment guaranteed counsel. As explained above, the facts do not support defendant's position that he was eligible for derivative citizenship. Accordingly, defendant suffered no prejudice for his counsel's failure to raise this issue with the Court. Moreover, defense counsel cannot be expected to challenge matters to which defendant specifically agreed or waived. Because defendant fails to establish that defense counsel's performance was deficient, there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different ." *Strickland*, 466 U.S. at 694. Accordingly, defendant's ineffective assistance of counsel claims fail.

### Certificate Of Appealability

28 U.S.C. § 2253(c)(1) precludes an appeal from a final order in section 2255 proceedings unless a circuit justice or judge issues a certificate of appealability ("COA"). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2); *see Williams v. Calderon*, 83 F. 3d 281, 286 (9th Cir. 1996). A COA issues when defendant demonstrates the questions raised are "debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4, 103 S.Ct. 3382, 3394-3395, n. 4 (1983). In the absence of a COA, no appeal in a section 2255 proceeding may be heard. 28 U.S.C. § 2253(c).

This Court has reviewed the record of this case and finds no jurist of reason could debate the correctness to deny defendant collateral relief. *See Barefoot*, 463 U.S. at 893, n. 4, 103 S.Ct. at 3394-3395, n. 4; *Clark v. Lewis*, 1 F. 3d 814, 819 (9th Cir. 1993). On the merits of this case, reasonable jurists would not debate the constitutionality of defendant's conviction. A certificate of appealability is improper.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court DENIES defendant section 2255 relief and a certificate of appealability.

IT IS SO ORDERED.

**Dated:   May 30, 2012**                              /s/ Lawrence J. O'Neill
                                                              UNITED STATES DISTRICT JUDGE